[No. B174696. Second Dist., Div. Seven. May 17, 2005.]

MARCUS & MILLICHAP REAL ESTATE INVESTMENT BROKERAGE
CO. et al., Plaintiffs and Appellants, v.
WOODMAN INVESTMENT GROUP et al., Defendants and Respondents.

## COUNSEL

Overland Borenstein Scheper & Kim, Diann H. Kim, Wendy O. Clendening and Kathryn E. White for Plaintiffs and Appellants.

Alschuler Grossman Stein & Kahan, Daniel Alberstone and David B. Dreyfus for Defendants and Respondents.

## OPINION

**PERLUSS, P. J.**—The trial court denied a petition to confirm an arbitration award filed by Marcus & Millichap Real Estate Investment Brokerage Company, Tony Azzi and John P. Walsh (collectively Marcus & Millichap) and granted the cross-petition to vacate the award filed by Woodman Investment Group, LLC (Woodman) and Eli Sasson, Woodman's managing partner, on the ground the arbitrator exceeded her authorized powers and the award could not be corrected without affecting the merits of the decision. (Code Civ. Proc., § 1286.2, subd. (a)(4).)[1] The court did not issue an order for rehearing pursuant to section 1287, and no appeal was taken from the order vacating the arbitration award. The trial court then awarded attorney fees and costs pursuant to section 1293.2 to Woodman and Sasson as the prevailing parties in the postarbitration judicial proceedings. Marcus & Millichap appeals the award of fees and costs. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

#### 1. *The Arbitration*

Marcus & Millichap filed a demand for arbitration in May 2002 for payment of a commission pursuant to a listing agreement with Woodman dated April 19, 2001, covering a shopping center located on Woodman Avenue in Van Nuys, California. Woodman filed a cross-complaint in the arbitration proceeding for breach of fiduciary duty and constructive fraud.

---

[1] Statutory references are to the Code of Civil Procedure.

In August 2003 the arbitrator issued an award (approximately $300,000, including $70,000 for attorney fees)[2] in favor of Marcus & Millichap against Woodman and Sasson. The arbitrator found Woodman liable on the parties' agreement and Sasson liable as Woodman's alter ego. Woodman's claims against Marcus & Millichap were denied.

### 2. *Postarbitration Judicial Proceedings*

Marcus & Millichap initiated a superior court action pursuant to section 1288, petitioning the court for confirmation of the arbitration award. Woodman and Sasson filed a response to the petition, as well as their own cross-petition to vacate the arbitration award on the ground the arbitrator had exceeded her authorized powers and the award could not be corrected without affecting the merits of the decision. Woodman and Sasson argued, because Sasson was not a signatory to the parties' agreement, which included the agreement to arbitrate, the arbitrator lacked jurisdiction over him.

On December 10, 2003, the trial court denied Marcus & Millichap's petition to confirm and granted Woodman and Sasson's cross-petition to vacate. Marcus & Millichap did not request, and the court's order vacating the arbitration award did not include, an order for rehearing the arbitration pursuant to section 1287. On December 17, 2003, Woodman and Sasson filed a motion to recover attorney fees and costs pursuant to section 1293.2, which authorizes the court to award costs in postarbitration judicial proceedings. Two days later, on December 19, 2003, Marcus & Millichap filed a motion for clarification of the order vacating the arbitration award, requesting the court to confirm the award as to Woodman only.

On March 29, 2004, the trial court denied Marcus & Millichap's motion for clarification and granted Woodman and Sasson's request for attorney fees and costs, awarding them $33,492.50 as the prevailing parties in the judicial proceedings. Marcus & Millichap filed a notice of appeal of the fees-and-costs award only; no appeal has been taken from the trial court's orders vacating the arbitration award or denying the motion for clarification.

### 3. *Subsequent Proceedings*

On April 15, 2004, the same day it filed its notice of appeal in this proceeding, Marcus & Millichap moved in the trial court for an order to

---

[2] The parties' agreement provides, "ATTORNEYS' FEES: In any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, including Agent, the prevailing party shall be entitled to recover its costs, including costs of arbitration, and reasonable attorneys' fees in addition to any other relief to which such party may be entitled."

compel arbitration against Sasson.[3] On May 17, 2004, Marcus & Millichap filed a new demand for arbitration before the American Arbitration Association concerning the dispute over its entitlement to a commission for the Woodman Avenue shopping center. On May 27, 2004, the trial court granted the motion to compel Sasson to arbitration.

Woodman and Sasson's challenges to Marcus & Millichap's renewal of the arbitration proceedings and to the trial court's order compelling the second arbitration have to date been unsuccessful.[4] On March 24, 2005, in response to Marcus & Millichap's second motion for clarification, the trial court issued a minute order stating: "[T]he Court clarifies its December 10, 2003 order to reflect its intent that rehearing of the arbitration shall take place between all parties. In its December 10, 2003 order, the Court vacated the entire arbitration award. On May 27, 2004, the Court granted [Marcus & Millichap's] motion to compel arbitration. The Court intended a rehearing of the arbitration between all parties, as reflected in the reporter's transcript of the hearing on the motion to compel arbitration. On three separate occasions, the Court has rejected [Woodman and Sasson's] argument that the lack of an order of rehearing bars any rehearing."[5]

## CONTENTION

Marcus & Millichap contends the trial court erred as a matter of law in awarding attorney fees and costs to Woodman and Sasson pursuant to section 1293.2 because the underlying dispute between the parties remains unresolved.

---

[3] On February 23, 2005, we granted in part Marcus & Millichap's request for judicial notice, which includes various filings relating to its efforts to renew the arbitration between the parties.

[4] On June 18, 2004, Woodman and Sasson filed a motion for judgment on the pleadings and for an order vacating the trial court's order compelling arbitration against Sasson on the ground the trial court lacked subject matter jurisdiction once the time for appeal of the trial court's order vacating the arbitration award had lapsed. The trial court denied that motion on September 9, 2004. We summarily denied Woodman and Sasson's petition for writ of mandate seeking reversal of that order. (*Woodman Investment Group, LLC v. Superior Court* (Sept. 30, 2004, B178196) [summary denial order].)

[5] On April 5, 2005, a month after we had heard oral argument and ordered the case at bar submitted, we took judicial notice of the trial court's March 24, 2005 order of clarification. In our order issued April 5, 2005 we also vacated submission of this matter and directed the parties to file supplemental letter briefs concerning the meaning and effect of the trial court's "clarification" of its December 10, 2003 order, particularly with respect to the appealability of the trial court's March 29, 2004 order awarding costs and attorney fees to Woodman. In addition, we stayed further proceedings in the trial court.

## DISCUSSION

### 1. *Governing Law*

 Section 1293.2 provides, "The court shall award costs upon any judicial proceeding under this title [governing arbitration] as provided in Chapter 6 (commencing with Section 1021) . . . of this code." Section 1033.5, part of chapter 6 of the Code of Civil Procedure, provides that items recoverable as costs include attorney fees when authorized by contract. (§ 1033.5, subd. (a)(10)(A).) The judicial proceedings covered by this provision include petitions to confirm or vacate an arbitration award. (§ 1285.)

 The award of costs pursuant to section 1293.2, including attorney fees when authorized by contract, is mandatory. (*Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 707 [131 Cal.Rptr.2d 250] ["A court must award costs in a judicial proceeding to confirm, correct or vacate an arbitration award."]; *Carole Ring & Associates v. Nicastro* (2001) 87 Cal.App.4th 253, 260 [104 Cal.Rptr.2d 519] (*Carole Ring*) ["the superior court was required to award [the prevailing party] reasonable attorney fees and costs for postarbitration judicial proceedings, pursuant to the statutory scheme governing arbitration."].)

 In *Carole Ring, supra,* 87 Cal.App.4th 253, Division Three of this court considered whether section 1293.2 permitted the award of postarbitration attorney fees and costs to the party prevailing on a claim under a contract that provided for arbitration and authorized attorney fees and costs to the prevailing party even though the arbitrator had directed the parties to bear their own attorney fees and costs. (87 Cal.App.4th at pp. 254–255.) Reversing the trial court's order denying a motion for award of fees, the court held the determination under section 1293.2 which party, if either, is the prevailing party in postarbitration proceedings is a judicial function distinct from the arbitrator's decision to award or not to award fees in the arbitration proceeding itself. (87 Cal.App.4th at pp. 260–261.)

"The arbitrator's earlier refusal to award attorney fees in the arbitration proceeding was not dispositive on the issue of postarbitration attorney fees. The arbitrator obviously did not, and could not, make a determination with respect to which, if either party, would be the prevailing party in subsequent postarbitration proceedings. For these reasons, the arbitrator's refusal to award attorney fees did not dictate a similar result with respect to Nicastro's request for attorney fees in postarbitration judicial proceedings. [¶] Because Nicastro was the prevailing party as a matter of law, the mandatory language

of the contractual attorney fees clause and section 1293.2 entitle Nicastro to reasonable attorney fees and costs incurred in postarbitration judicial proceedings." (*Carole Ring, supra,* 87 Cal.App.4th at p. 261.)[6]

### 2. Woodman and Sasson Were Properly Awarded Fees and Costs

#### a. Woodman and Sasson Were the Prevailing Parties in the Postarbitration Judicial Proceedings

█ In the postarbitration judicial proceedings in this case, commenced on August 27, 2003, by Marcus & Millichap after the arbitrator made her award in its favor, the trial court denied Marcus & Millichap's petition to confirm and granted Woodman and Sasson's cross-petition to vacate the award (without ordering a rehearing pursuant to section 1287). Considering the judicial proceedings initiated by Marcus & Millichap pursuant to section 1285 as distinct from the arbitration itself, as did Division Three in *Carole Ring*, Woodman and Sasson were entirely successful: Not only did they defeat Marcus & Millichap's effort to have the arbitration award confirmed but also they persuaded the trial court to vacate the arbitration award as to both Woodman and Sasson. As a matter of law, with respect to the postarbitration judicial proceedings, Woodman and Sasson must be considered the prevailing party within the meaning of section 1032, subdivision (a)(4) (" 'prevailing party' " includes a defendant or other party against whom a complaint has been filed "in whose favor a dismissal is entered," as well as a defendant "as against those plaintiffs who do not recover any relief against that defendant").

#### b. The Judicial Proceeding Initiated by Marcus & Millichap to Confirm Its Arbitration Award Is "Final" for Purposes of an Award of Fees

█ Whether or not Marcus & Millichap is correct in asserting it may initiate another arbitration proceeding to determine its right to a commission without an express order for rehearing pursuant to section 1287—an issue not presented by Marcus & Millichap's appeal from the order awarding costs and attorney fees and as to which we express no view—its argument that the judicial proceeding it initiated is not yet "final" is unpersuasive. Section 1294, subdivision (c), expressly provides that an order vacating an arbitration award is appealable "unless a rehearing in arbitration is ordered." Thus, while

---

[6] Division Three emphasized it was not presented with a situation in which the arbitrator had concluded there was no valid or enforceable attorney fees provision in the parties' contract, a ruling that would have precluded the superior court from awarding attorney fees for postarbitration judicial proceedings. (*Carole Ring, supra,* 87 Cal.App.4th at p. 260.)

an order vacating an arbitration award and ordering rehearing is an "intermediate ruling," a similar order vacating an award without ordering rehearing is, of necessity, "final." (*Long Beach Iron Works, Inc. v. International Molders etc. of North American, Local 374* (1972) 26 Cal.App.3d 657, 659 [103 Cal.Rptr. 200] ["It is quite obvious that the Legislature's philosophy and intent in drafting section 1294 was that there should be no appellate consideration of intermediate rulings in arbitration disputes if the superior court was of the view that there should be initial or further proceedings in arbitration. . . . [T]he Legislature expressly excepted orders vacating awards but directed rehearings in arbitration from a roster of appealable rulings in section 1294."].)[7]

The trial court's belated, March 24, 2005 order of clarification does not alter our conclusion as to the finality for purposes of a cost and fee award of its earlier order vacating the arbitration award without an order for rehearing. The court's explanation of "its intent that rehearing of the arbitration shall take place between all parties," as emphatic as it may be, is simply a ruling that the absence of an express order for rehearing does not necessarily bar a rehearing—a ruling, as the court itself notes, it had also made on three occasions prior to its March 24, 2005 ruling. Indeed, notwithstanding Marcus & Millichap's argument to the contrary, the trial court appears to have carefully worded its clarification to avoid suggesting it was attempting to correct nunc pro tunc its December 10, 2003 order to include an order for a rehearing. Because no rehearing of the arbitration was ordered by the trial court and Marcus & Millichap did not appeal from the order vacating the arbitration award (or, for that matter, from the trial court's subsequent denial of its motion for clarification of the order vacating the arbitration award), the trial court's decision to vacate the original arbitration award is now final.

*Green v. Mt. Diablo Hospital Dist.* (1989) 207 Cal.App.3d 63 [254 Cal.Rptr. 689], upon which Marcus & Millichap relies, does not support a contrary result. In *Green* the Court of Appeal affirmed an order denying a petition to compel arbitration of disputes arising from an employment contract and a buyout agreement between Green and the Hospital District. The petition had been filed at least partially in response to a complaint for declaratory relief by a taxpayers group alleging that the termination agree-

---

[7] By permitting an appeal from an order vacating an arbitration award when no rehearing in arbitration has been ordered, section 1294, subdivision (c), eliminates any question that the superior court, when vacating an arbitration award, is not obligated to order such a rehearing in all cases in which it has vacated the original arbitration award.

ment between Green, the Hospital District's chief executive officer, and the Hospital District was void. (*Id.* at pp. 68–69.) Affirmance of the order denying Green's request for arbitration left the taxpayers' action for declaratory relief and Green's breach of contract claim against the Hospital District "subject to judicial determination of whether or not the agreement is illegal." (*Id.* at p. 76.)

In rejecting the Hospital District's cross-appeal arguing that the trial court should have awarded it attorney fees following denial of Green's petition to compel arbitration, the Court of Appeal held an award of fees would be premature because the claims of the parties remained before the court and subject to judicial determination. "[T]he trial court has not reached the merits of the case. . . . The trial court, therefore, correctly concluded that there has been no final determination of the rights of the parties . . . ." (*Green v. Mt. Diablo Hospital Dist., supra,* 207 Cal.App.3d at p. 76.) Because no rehearing of the arbitration was ordered and Marcus & Millichap did not appeal the order vacating the arbitration award in this case, unlike the situation presented by *Green,* no claim of either party remains before the court or otherwise subject to judicial determination: The trial court's rulings are final. (See *Long Beach Iron Works, Inc. v. International Molders Etc. of North American, Local 374, supra,* 26 Cal.App.3d at p. 659.)

Finally, although not raised in its briefs on appeal, Marcus & Millichap suggested at oral argument that, even if Woodman and Sasson are prevailing parties and entitled to an award of costs under section 1293.2, they are not entitled to attorney fees under the parties' contract until they prevail on the underlying contract claim. The listing agreement, however, authorizes the award of attorney fees "[i]n any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto." This contractual language, like section 1293.2 itself, requires postarbitration judicial proceedings to be considered a discrete "legal proceeding" for purposes of determining a party's right to an award of attorney fees.

### 3. *Marcus & Millichap's Motion for Sanctions Is Denied*

All parties agreed to participate in the mediation program administered by the Second District Court of Appeal.[8] Notice of the conference date and location sent by the clerk of the court specifically advised the parties, in boldface type, "It is mandatory that ALL PARTIES and their counsel as well as any other individual whose presence is necessary to effect a settlement of the case be present at the settlement conference. . . . [F]ailure to either

---

[8] Although the court's mediation program is voluntary, once the parties agree to participate, they are advised that compliance with the procedures set forth in the court's scheduling letter is mandatory and that noncompliance risks the imposition of sanctions.

participate in good faith or to attend is likely to result in the imposition of appropriate sanctions."[9]

Marcus & Millichap was represented at the scheduled mediation conference by both outside litigation counsel and the general counsel of Marcus & Millichap Real Estate Investment Co., who traveled from Northern California to attend the session. Woodman and Sasson were represented only by their outside litigation counsel, who stated he had full authority to settle the issue of attorney fees and costs raised in the instant appeal. Neither appellants Tony Azzi and John P. Walsh nor respondent Eli Sasson attended the conference.

At the outset of the conference counsel disputed whether they had agreed to attempt to mediate only the attorney fee dispute, the issue presented by Marcus & Millichap's appeal (Woodman and Sasson's position), or to discuss settlement of both the appeal and the underlying dispute regarding Marcus & Millichap's claim to a commission under the listing agreement (Marcus & Millichap's position). As a result no productive discussions of any sort occurred.

Following the fruitless mediation conference, Marcus & Millichap moved for sanctions against Woodman and Sasson for Sasson's failure to personally appear at the court-ordered mediation conference. The motion is supported by a declaration from Marcus & Millichap's litigation counsel and related exhibits. Woodman and Sasson filed an opposition at our request, which likewise includes a declaration from counsel who attended the mediation conference, as well as related exhibits.

Because it is impossible for us to determine from the conflicting declarations what, if any, agreement had been reached by counsel to discuss a possible global resolution of the parties' disputes, rather than to address the single issue actually raised in this appeal, we deny the motion for sanctions. What is apparent is that *both* sides to the dispute failed to have all parties to the appeal present at the mediation and, more importantly, that the failure of counsel to communicate with each other clearly and forthrightly about their positions and intentions prior to the mediation conference resulted in a waste of the volunteer mediator's valuable time. We expect more.

---

[9] The form notice sent by the clerk of the court has been slightly revised since the date of the mediation conference in the case at bar. In its current iteration the form provides, "It is MANDATORY that all named parties and their counsel attend all mediation sessions. If a party is not an individual, then a party representative with full authority to settle all appeals and cross-appeals must attend in person. In cases where insurance coverage may apply, a representative of each carrier with full settlement authority must attend in person. . . . Failure either to attend or to participate in good faith will likely result in the imposition of sanctions."

## DISPOSITION

The order awarding attorney fees and costs is affirmed. The stay of proceedings in Los Angeles Superior Court case No. BS085380 is terminated. Woodman and Sasson are to recover their costs on appeal.

Johnson, J., concurred.

**WOODS, J.**—I respectfully dissent from that portion of the opinion holding that the arbitration proceedings in the trial court were final thereby entitling Woodman to claim attorney fees. The majority opinion, in my view, is overly technical in its approach to the problem, and sidesteps equitable principles which should lead to a reversal. Of great importance is the fact that the Legislature has not revealed its intent when it enacted Code of Civil Procedure section 1287 as to the meaning of the word *"rehearing."* In my view the question is one of first impression and requires the application of two guiding principles which I hereafter discuss. Before applying the guiding principles which I find applicable and determinative of the appeal, it first appears prudent to repeat the content of the statute which is pertinent to the central issue in this case. Section 1287 is entitled "Rehearing before arbitrators" and provides as follows:

"If the award is vacated, the court may order a rehearing before new arbitrators. If the award is vacated on the grounds set forth in subdivision (d) or (e) of Section 1286.2, the court with the consent of the parties to the court proceeding *may* order a rehearing before the original arbitrators." (Italics added.)

When the Legislature uses language in a statute which is indicative of discretion, such as the use of *"may"* in Code of Civil Procedure, section 1287, as opposed to more mandatory language such as *"must"* or *"shall,"* the parties to litigation and the courts are left in a position of having to speculate as to the proper application of such words, unless the Legislature has made it clear how such words are to be applied by a statement in the legislative history. As the majority and this dissenting justice maintain, the legislative history is unavailing in this instance. To put it in the vernacular, the parties and the courts are *at sea* without a rudder on the core issue in this appeal.

The quandary of the parties and the courts in such instances is generally exemplified in 58 Cal.Jur.3d (2004) Statutes, section 152, pages 578–579 as follows: "The distinction between directory and mandatory statutes is not susceptible of exact definition, for it depends on legislative intent, and consequently there is no simple, mechanical test for determining whether a provision should be given directory or mandatory effect. . . . The

mandatory-directory and obligatory-permissive dichotomies are analytically distinct. . . . In order to determine whether a particular statutory provision is mandatory or directory, in the absence of express language reflecting the legislative intent, the courts must ascertain or gather such intent from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. . . . While the use of particular terms [is] generally indicative of a command rendering the provision mandatory, including terms such as 'must' or 'shall,' which as used in statutes is ordinarily the language of command, the use of the word 'must' in a statute does not necessarily make the provision mandatory, and likewise, the use of the term 'shall' does not necessarily make the provision mandatory. . . . Although 'may' is ordinarily permissive, evoking the idea of possibility, this is not a fixed rule of statutory construction. . . . Directory provisions ordinarily relate to matters of form. Where consequences are attached to failure to do a required act, the direction to do it will be held mandatory. . . . Statutory time limits are usually deemed to be directory. . . ." (Citations omitted.)

What we are left with are two principles. The *first and foremost* is the general proposition that arbitration statutes are remedial in nature and are to be liberally construed with every reasonable intendment favoring the validity of arbitration awards. (*Goossen v. Adair* (1960) 185 Cal.App.2d 810 [8 Cal.Rptr. 855].) The policy in this state is to favor arbitration. (*Firestone Tire and Rubber Co. v. United Rubber Workers of America* (1959) 168 Cal.App.2d 444 [335 P.2d 990].) The *second* principle rests on the fact that Code of Civil Procedure section 1287 uses discretionary language stating that "the court with the consent of the parties to the court proceeding *may* order a rehearing before the original arbitrators." (Italics added.) Left with these two guiding principles and nothing further, I conclude the trial court erred in awarding fees and costs to Woodman, since the matter was still pending in arbitration and not final, thereby undercutting the attorney fees clause in the contractual arbitration agreement stating: "In any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, including Agent, the prevailing party shall be entitled to recover its cost, including costs of arbitration, and reasonable attorneys' fees in addition to any other relief to which such party may be entitled."

I opine that the Legislature certainly knew how to utilize the mandatory word "*shall*" or even "*must*" had it chosen to do so. One need only examine Code of Civil Procedure section 1293.2 to find evidence of the Legislature's sophistication in the available use of the mandatory word "*shall*," where the Legislature has declared "The court *shall* award costs upon any judicial proceeding under this title as provided in Chapter 6 (commencing with [s]ection 1021) of the Title 14 of Part 2 of this code." (Italics added.) Often,

courts resort to dictionary assistance in determining the meaning of words. For instance, "*shall*" denotes "[d]etermination or promise"; "[i]nevitability"; "[c]ommand"; "directive or requirement." (American Heritage Dict. (2d college ed. 1982) p. 1125, col. 2.) In contrast, "*may*" denotes "[t]o be allowed or permitted to"; "likelihood or possibility"; or "contingency." (American Heritage Dict., *supra*, p. 774, col. 1.)

I recall that the intention of General Douglas MacArthur pertaining to the invasion of the Philippine Islands was expressed in determined language when he declared "I *shall* return." He didn't say "I *may* return." I find the use of *may* by the Legislature to be just as permissive, contingent and confusing as had the great general made the mistake of using the word *may* in his declaration of intentions.