54 Cal.Rptr.3d 724 (2006)
MBNA AMERICA BANK, N.A., Plaintiff and Appellant,
v.
John GORMAN, Defendant and Respondent.
No. 1-06-AP-000373.
Appellate Division, Superior Court, Santa Clara County.
December 19, 2006.
As Modified January 2, 2007.
*727 Wolpoff & Abramson and Calvin S. Rose for Plaintiff and Appellant.
Gorman & Miller, John Gorman, and Craig Alan Hansen, Santa Monica, for Defendant and Respondent.

OPINION[*]
SCHNEIDER, P.J.

Facts and Procedural Background
This appeal is from an order of the superior court, (Hon. Kevin McKenney) granting defendant and respondent John Gorman's motion for attorney's fees and costs. Wolpoff & Abramson and Calvin S. Rose appeared for plaintiff and appellant MBNA America Bank, N.A. Gorman and Miller and John Gorman appeared for defendant and respondent.
On August 4, 2004, appellant obtained an arbitration award in the amount of $8,042.29 against respondent. On May 26, 2005, appellant filed a petition to confirm the arbitration award in the trial court. In an order filed on February 1, 2006, the trial court denied the petition to confirm arbitration award on the ground that under Badie v. Bank of America (1998) 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273 (Badie), "a mailed insert or `bill stuffer' cannot serve as a waiver of the procedural right of trial by jury or as a basis for enforcement of an ADR clause by a unilaterally issued change in the original agreement."
On February 16, 2006, filed a motion for attorney's fees and costs. Respondent argued that his fees and costs were recoverable under (1) the attorney's fee provision in the credit card agreement sued upon by appellant; and (2) the "private attorney general doctrine" codified at Code of Civil Procedure section 1021.5. In its April 10, 2006 order, the trial court granted the request for costs and fees in the amount of $23,490.77, finding that was "the prevailing party in this proceeding."
On May 8, 2006, filed the instant notice of appeal of the April 10, 2006 order.

Contentions on Appeal
Appellant contends that the trial court erred in determining that respondent was the prevailing party because as a prerequisite to an award of contractual attorney's fees under Civil Code section 1717, there must be a final determination of the contractual rights giving rise to the dispute. Citing Hsu v. Abbara (1995) 9 Cal.4th 863, 877, 39 Cal.Rptr.2d 824, 891 P.2d 804(Hsu), *728 appellant argues that since neither party has yet prevailed on the contract claim involving respondent's alleged debt, and because the denial of appellant's petition was merely an "ancillary ruling" regarding the arbitration award, there can be no award of contractual attorney's fees at this time.
Appellant also contends that the trial court erred in awarding respondent attorney's fees under Code of Civil Procedure section 1021.5[1] (the private attorney general doctrine). Appellant contends that an important right affecting public interest will not be enforced by this denial because the mere denial of a petition to confirm arbitration award has no binding precedential effect on appellant. Furthermore, appellant contends that the decision did not confer a significant benefit on the general public because respondent challenged the petition primarily for personal financial reasons.

Standard of Review
The legal determination that a party is entitled to recover attorney's fees pursuant to a contract is reviewed de novo. (See Leamon v. Krajkiewcz (2003) 107 Cal. App.4th 424, 431, 132 Cal.Rptr.2d 362, citing Sessions Payroll Management, Inc. v. Noble Construction Co. (2000) 84 Cal. App.4th 671, 677, 101 Cal.Rptr.2d 127.)
The determination of private attorney general fee awards under section 1021.5 is reviewed under an abuse of discretion standard. (See Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors (2000) 79 Cal. App.4th 505, 511-512, 94 Cal.Rptr.2d 205 (Families Unafraid), citing Feminist Women's Health Center v. Blythe (1995) 32 Cal.App.4th 1641, 1666, 39 Cal.Rptr.2d 189.)

Discussion

The Trial Court Did Not Err in Awarding Attorney's Fees Pursuant to Contract
Section 1293.2 mandates that "[t]he court shall award costs upon any judicial proceeding under this title [Title 9Arbitration] as provided in Chapter 6 (commencing with Section 1021) of Title 14 of Part 2 of this code." A petition to confirm or vacate an arbitration award is covered by this title. (See § 1285.) Section 1032 subdivision (a)(4) of title 14 defines a "`Prevailing party"' as "a defendant as against those plaintiffs who do not recover any relief against that defendant."
In the instant matter, respondent was indeed a "prevailing party" under section 1032 subdivision (a)(4) in a judicial proceeding under title 9. Appellant's petition to confirm the arbitration award was denied, and appellant therefore failed to recover any relief against respondent. Thus, under the mandate in section 1293.2, the trial court was required to award respondent his costs.
Awardable "costs" may include attorney's fees where they are authorized by contract, statute, or law. (§ 1033.5, subd. (a)(10).) Here, the credit card agreement between the parties contained a contractual attorney's fee provision. Although this attorney's fee provision confers a unilateral right to attorney's fees to appellant, Civil Code section 1717 implies a bilateral right to attorney's fees in actions on a contract. (See Civ.Code, § 1717, subd. (a).)
*729 In Hsu, supra, 9 Cal.4th at page 876, 39 Cal.Rptr.2d 824, 891 P.2d 804, the Supreme Court instructed that "in deciding whether there is a `party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by `a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' [Citation.]" In the instant matter, there is no question that respondent obtained a simple, unqualified victory by defeating the petition to confirm arbitration award.
An action is "on the contract" when it is brought to enforce the provisions of the contract. (See McKenzie v. Kaiser-Aetna (1976) 55 Cal.App.3d 84, 89-90, 127 Cal.Rptr. 275.) Here, the petition proceeding initiated by appellant was to enforce an award obtained pursuant to a mandatory arbitration provision in the parties' contract. The arbitration provision was a term of the contract, and thus, the petition proceeding was an attempt to enforce a term of the contract. Even though respondent opposed the petition on the ground that it was unenforceable, "a party is entitled to attorney fees under [Civil Code] section 1717 `even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.' [Citations.]" (Hsu, supra, 9 Cal.4th at p. 870, 39 Cal.Rptr.2d 824, 891 P.2d 804.)
In determining whether a final resolution has resulted, Hsu instructs us to look at the litigation objectives as disclosed by the pleadings and other similar sources and to compare those with the relief awarded. Here, appellant's litigation objectives were set forth in its petition to confirm the arbitration award. Therein, appellant attached a copy of the arbitration agreement and the notice of arbitration claim, and argued that the agreement was enforceable and therefore, the award should be confirmed. By declaring the agreement unenforceable in California, the trial court thwarted appellant's litigation objectives in initiating this judicial proceeding.
Moreover, appellant did not appeal the original petition denial, and the trial court did not order a rehearing of the arbitration. Thus, the original petition denial was final for purposes of awarding attorney's fees. (See Marcus & Millichap Real Estate Investment Brokerage Co. v. Woodman & Sasson Investment Group (2005) 129 Cal.App.4th 508, 515-516, 28 Cal. Rptr.3d 584 (Marcus & Millichap).)
Finally, the contractual attorney's fee provision in this case authorizes attorney's fees in "any collection proceeding." Thus, it authorizes attorney's fees in any kind of discrete legal proceeding that involves collection of a debt. (See Marcus & Millichap, supra, 129 Cal.App.4th at p. 516, 28 Cal.Rptr.3d 584.) Here, the discrete legal proceeding was a petition to confirm an award, or, an attempt to collect on a debt through arbitration, and respondent prevailed in opposing it.
For these reasons, we affirm the award of attorney's fees pursuant to the parties' contract. Although the contract provides independent grounds for the award of attorney's fees, the April 10, 2006 order was silent on the legal basis for the award. Thus, we will also consider whether the trial court properly granted attorney's fees under section 1021.5.

*730 The Trial Court Did Not Err in Awarding Attorney's Fees Pursuant to Statute (Section 1021.5)
In support of his motion for attorney's fees, respondent cited section 1021.5, the private attorney general statute. In opposing the motion, appellant raised no argument with regard to section 1021.5. Nor was the issue of section 1021.5 discussed at the March 23,2006 hearing on the motion. Appellant's first challenge to the applicability of section 1021.5 came in its opening brief on appeal. The April 10, `2006 order does not state whether the award is made pursuant to contract or statute. "`Where, as here, the court was not asked to, and did not make findings on substantial factual issues, we must infer all findings necessary to support the judgment' and uphold them `if they are based on substantial evidence' in the record." (Citizens Against Rent Control v. City of Berkeley (1986) 181 Cal.App.3d 213, 233, 226 Cal.Rptr. 265 (Citizens).)
Section 1021.5 allows a court to award attorney's fees to a successful party in any action which has resulted in the enforcement of an important public right affecting the public interest. "`Entitlement to fees under section 1021.5 requires a showing that the litigation: "(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) [was necessary and] imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter."'" (Families Unafraid, supra, 79 Cal.App.4th at p. 511, 94 Cal.Rptr.2d 205, citing Baggett v. Gates (1982) 32 Cal.3d 128, 142, 185 Cal.Rptr. 232, 649 P.2d 874 (Baggett).)

Important Public Right
The determination that the public policy vindicated is one of constitutional stature satisfies the "important public right" requirement. (See Slayton v. Pomona Unified School Dist. (1984) 161 Cal. App.3d 538, 547, 207 Cal.Rptr. 705.) In its February 1, 2006 order denying the petition to confirm arbitration award, the trial court stated that bill staffer inserts were not enforceable means of waiving the procedural right of trial by jury. The right to a jury trial is constitutionally protected. (Cal. Const., art. I, § 16; Badie, supra, 67 Cal.App.4th at p. 804, 79 Cal.Rptr.2d 273.) Thus, the February 1, 2006 order suffices as substantial evidence in the record to support the trial court's finding that an important public right was vindicated by the petition denial.

Significant Public Benefit
"Litigation which enforces constitutional rights necessarily affects the public interest and confers a significant benefit upon the general public." (City of Fresno v. Press Communications, Inc. (1994) 31 Cal.App.4th 32, 44, 36 Cal. Rptr.2d 456, citing Press v. Lucky Stores, Inc. (1983) 34 Cal.3d 311, 318, 193 Cal. Rptr. 900, 667 P.2d 704 (Press).) "While these rights are by nature individual rights, their enforcement benefits society as a whole." (Press, supra 34 Cal.3d at p. 319, 193 Cal.Rptr. 900, 667 P.2d 704.) "The evidence of the size of the population benefited by a private suit is not always required. The substantial benefit may be conceptual or doctrinal, and need not be actual and concrete, so long as the public is primarily benefited." (Planned Parenthood, Inc. v. Aakhus (1993) 14 Cal.App.4th 162, 171, 17 Cal.Rptr.2d 510, citing Braude v. Automobile Club of Southern Cal. (1986) 178 Cal.App.3d 994, 1011, 223 Cal.Rptr. 914.)
Not all constitutional rights are sufficiently "important" to warrant the award of fees. (Press, supra, 34 Cal.3d at *731 pp. 319-320, fn. 7, 193 Cal.Rptr. 900, 667 P.2d 704, citing Pacific Legal Foundation v. California Coastal Com, (1982) 33 Cal.3d 158, 188 Cal.Rptr. 104, 655 P.2d 306.) Here, however, the fundamental importance of the right to a jury trial in our system of jurisprudence is well established. (See Badie, supra, 67 Cal.App.4th at p. 804, 79 Cal.Rptr.2d 273; Titan Group, Inc. v. Sonoma Valley County Sanitation Dist. (1985) 164 Cal.App.3d 1122, 1127, 211 Cal.Rptr. 62.)
Furthermore, it is not necessary, as appellant contends, that the order denying appellant's petition be "binding precedent" in order to confer a significant benefit on the general public. In Press, a labor group obtained an injunction against a store that had ordered them to stop circulating petitions. Although the injunction was obtained against only one store in a large supermarket chain, it was found to confer a significant benefit on the general public, in part because it deterred the supermarket chain from preventing plaintiffs' access to other stores as well. (See Press, supra, 34 Cal.3d at pp. 320-321, 193 Cal.Rptr. 900, 667 P.2d 704.) Likewise, although the April 10, 2006 order does not formally enjoin appellant from enforcing the arbitration agreement against other customers, it should effectively deter appellant from doing so at least with regard to customers similarly situated to respondent.[2]

Disproportionate Financial Burden
"`An award on the "private attorney general" theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter."'" (Marini v. Municipal Court (1979) 99 Cal.App.3d 829, 836, 160 Cal. Rptr. 465.) Even if a litigant is initially motivated by his or her own economic interests, if the burden of litigation is disproportionate to the individual stake, and the other requirements of section 1021.5 are met, fees may be awarded. (Citizens, supra, 181 Cal.App.3d at pp. 229-230, 226 Cal.Rptr. 265.)
Here, respondent had a personal interest in preventing confirmation of the arbitration award. However, the burden of challenging the petition proceedings was not insignificant. The transcript of the August 9, 2005 hearing reflects that the trial court continued the hearing and requested further briefing on various topics. The declaration of respondent's counsel submitted in support of the motion for fees includes complete time records for the work respondent performed in this matter, which the trial court found to be "reasonable and necessary." These "necessary" attorney's fees almost tripled the amount of debt at issue in this lawsuit. Thus, there is substantial evidence to support the trial court's finding that respondent's financial burdens transcended his personal stake.
Furthermore, prevailing in the petition proceeding did not guarantee respondent any ultimate pecuniary benefit. At the March 23, 2006 hearing, appellant informed the trial court that it intended to file a separate lawsuit against respondent to collect on the underlying debt. Thus, the successful enforcement of respondent's right to trial by jury in the instant matter does not necessarily absolve him of the obligation to pay the underlying debt at *732 some later point in time. Considering the fact that respondent has already incurred litigation expenses that nearly triple the amount of a debt he may still have to pay, the trial court reasonably found that the financial burden of enforcing his right to a jury trial was out of proportion to his personal stake. (See Baggett, supra, 32 Cal.3d at p. 143, 185 Cal.Rptr. 232, 649 P.2d 874 [police officers' financial burden in enforcing their right to appeal reassignments was out of proportion to their personal stake because there was no guarantee that securing the appeal would reverse the reassignments]; Otto v. Los Angeles Unified School Dist. (2003) 106 Cal. App.4th 328, 333, 130 Cal.Rptr.2d 512 [police officer's financial burden in enforcing right to appeal placement of a punitive document in his personnel file was out of proportion to his personal stake because there was no guarantee that securing the appeal would lead to removal of the document from his file].)
For these reasons, we affirm the award of attorney's fees under section 1021.5. The next issue is whether the trial court erred in calculating the amount of the attorney's fees awarded.

Lodestar Analysis for "Reasonable" Attorney's Fees
Appellant does not dispute the reasonableness of the fee award or the method of calculation on appeal. However, the lodestar method of calculating reasonable fee awards is the "`starting point of every fee award.'" (Serrano v. Priest (1977) 20 Cal.3d 25, 48, fn. 23, 141 Cal. Rptr. 315, 569 P.2d 1303 (Serrano III).) "[S]ince determination of the lodestar figures is so `[fundamental' to calculating the amount of the award, the exercise of that discretion must be based on the lodestar adjustment method." (Press, supra, 34 Cal.3d at p. 322, 193 Cal.Rptr. 900, 667 P.2d 704, citing Serrano III, supra, 20 Cal.3d at pp. 48-49, 141 Cal.Rptr. 315, 569 P.2d 1303; Mandel v. Lackner (1979) 92 Cal.App.3d 747, 758, 155 Cal.Rptr. 269 (Mandel).)
When a party is entitled to attorney fees under section 1021.5, the amount of the award must be determined according to the guidelines set forth by this court in Serrano III. The trial court must first determine a "touchstone" or "lodestar" figure based on "a careful compilation of the time spent and reasonable hourly compensation for each attorney ... involved in the presentation of the case." (Serrano III, supra, 20 Cal.3d at p. 48, 141 Cal.Rptr. 315, 569 P.2d 1303.) After making this calculation, the court may consider other factors and assign a multiplier that may augment or diminish the lodestar amount.[3]
In its April 10, 2006 order, the trial court found that the fees incurred were "reasonable and necessary." We review those findings for abuse of discretion, i.e., whether the amount awarded "bear[s] some reasonable relationship to the lodestar figure and to the purpose of the private *733 attorney general doctrine." (Press, supra, 34 Cal.3d at p. 324, 193 Cal.Rptr. 900, 667 P.2d 704.)

Time Reasonably Spent
Prevailing counsel are entitled to compensation for all hours "reasonably spent unless special circumstances would render an award unjust." (Vo v. Las Virgenes Municipal Water Dist. (2000) 79 Cal.App.4th 440, 446, 94 Cal.Rptr.2d 143, citing Serrano v. Unruh (1982) 32 Cal.3d 621, 639, 186 Cal.Rptr. 754, 652 P.2d 985.) Time is compensable if it was reasonably expended and is the type of work that would be billed to a client. (See Hensley v. Eckerhart (1983) 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40.)
Here, respondent presented the trial court with adequate time records listing all of the services performed and hours spent for each of the two attorneys who worked on this matter. A review of the time records shows that a total of 61.25 hours were spent on this case. The services consisted entirely of ordinary litigation activities, i.e., correspondences and telephone conferences with opposing counsel, legal research, drafting legal documents, reviewing opposing counsel's filings, and preparation for and attending hearings. None of the services listed in the cost invoice appear to be unusual or extraordinary, and, according to the declaration were all billed to respondent. Thus, the trial court had a reasonable basis to find that the 61.25 hours was time reasonably spent on this matter.

Market Rate
The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. (Ketchum v. Moses (2001) 24 Cal.4th 1122, 1139, 104 Cal. Rptr.2d 377,17 P.3d 735 (Ketchum).) The determination of market rate is generally based on the rates prevalent in the community where the services are rendered, i.e., where the court is located. (Davis v. Mason County (9th Cir.1991) 927 F.2d 1473, 1488.)
The burden is on the successful party to prove the appropriate market rate to be used in calculating the lodestar. (Blum v. Stenson (1984) 465 U.S. 886, 895 fn. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891.) However, the moving party may satisfy its burden through its own affidavits, without additional evidence. (Davis v. City of San Diego (2003) 106 Cal.App.4th 893, 903, 131 Cal.Rptr.2d 266.) Moreover, in assessing a reasonable hourly rate, the trial court is allowed to consider the attorney's skill as reflected in the quality of the work, as well as the attorney's reputation and status. (See Ketchum, supra, 24 Cal.4th at p. 1139, 104 Cal.Rptr.2d 377, 17 P.3d 735; Mandel, supra, 92 Cal.App.3d at p. 761, 155 Cal.Rptr. 269.) Here, the declaration of respondent's counsel states the hourly billing rates for the two attorneys who worked on this matter: $375 and $260.[4] The declaration of respondent's counsel attests to counsel's many years of business litigation experience. As indicated in the April 10, 2006 order, "[appellant] submitted no evidence that respondent's fees are excessive." Based on review of this evidence, the trial court had a reasonable basis to find that the billing rates set forth in the declaration of respondent's counsel were reasonable hourly rates.

Conclusion
For these reasons, the April 10, 2006 Santa Clara County Superior Court order granting respondent his costs and *734 attorney's fees is affirmed. Respondent seeks his reasonable attorney's fees and costs on appeal. "Where a contract or a statute creates a right for the prevailing party to recover attorney fees, the prevailing party is also entitled to attorney fees on appeal." (Viilinger/Nicholls Development Co. v. Meleyco (1995) 31 Cal.App.4th 321, 329, 37 Cal.Rptr.2d 36 citing Palmer v. Agee (1978) 87 Cal.App.3d 377, 387-88, 150 Cal.Rptr. 841.) The request for attorney's fees and Costs on appeal is granted.
EDWARD F. LEE, J., concurred.
BONINI, J., also participated in this opinion.
NOTES
[*] On January 2, 2007, this opinion was modified to read as set forth herein.
[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.
[2] By similarly situated, we mean those customers of appellant against whom the arbitration agreement would be unenforceable for the same reasons it was found to be unenforceable against respondent in the trial court proceedings below.
[3] Among these factors are: "(1) the novelty and difficulty of the questions involved ...; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that' an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits of the character here involved; (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed; and (7) the fact that in the court's view the two law firms involved had approximately an equal share in the success of the litigation." (Serrano III, supra, 20 Cal.3d at p. 49, 141 Cal.Rptr. 315, 569 P.2d 1303, fn. omitted.)
[4] According to the declaration, counsels' hourly billing rates were increased in 2006 to $400 and $280, respectively.