Filed 2/5/25  T&C Properties v. St. James Property Co. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| T&C PROPERTIES, LLC,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>ST. JAMES PROPERTY CO., LLC,<br><br>　　　Defendant and Respondent. | A169514<br><br>(San Francisco City & County<br>Super. Ct. No. CPF-20-517292) |

In 2019, appellant T&C Properties, LLC (T&C) and respondent St. James Property Co., LLC (St. James) took certain disputes over commercial property they co-owned to arbitration, an arbitration that initially produced a partial award, resolving some issues but reserving jurisdiction as to others. T&C initiated this litigation by petitioning the trial court to confirm and correct the partial award. After the trial court confirmed the partial award without change, the arbitrator issued a final award, and both parties filed petitions to confirm, correct, and/or vacate that award. The trial court confirmed the final award without change, and ultimately awarded St. James approximately $318,000 in attorney fees incurred in connection with the trial court proceedings. T&C appeals the trial court's fee award, contending that it, not St. James, was the prevailing party in the trial court. We affirm.

1

## BACKGROUND

### The Parties and the General Setting

It has long been said that arbitration is favored as a " 'speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 and cases there collected; *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492.) That description hardly applies here, an arbitration that lasted over three years and generated combined attorney fees to the parties exceeding $1 million. While all the reasons for this are not in the record, one reason may be this observation from the experienced arbitrator, the Honorable Richard Kramer (Ret.), who would later explain, "this case could have been a relatively simple landlord-tenant dispute regarding the terms of a long-term lease/holdover arrangement" for the property, but for "two crucial complicating factors," one of which "is that the principals of each of the entities involved in this dispute, including the non-party tenant [RSC], are feuding family members embroiled in a fight that has spanned two generations."

The participants in this generational dispute were Harold "Bob" Rubenstein (who died in 2018), his wife Lillian, and two of their three children—Ron, the oldest and a retired attorney, and Craig, the middle child. And the entities involved are St. James, a California LLC owned by two trusts of which Lillian and Ron were the co-trustees, and T&C, also a California LLC, whose principals are Craig and Terri Rubenstein, his wife.

Prior to 2018, T&C and St. James were each 50% owners of certain commercial real property located at 2800, 2818, and 2838–44 San Pablo Avenue in Oakland (the Property). Rubenstein Supply Company (RSC)[1], a

---

[1] As is apparent from the above, and as will be seen in more detail below, our recitation here is replete with acronyms, a practice, we hasten to

family plumbing supply business founded by Bob Rubenstein and his two older brothers in the 1930's, has occupied the property for roughly 80 years.

In 2001, T&C, L&B Property Co. (L&B) (the predecessor to St. James), and RSC entered into a five-year lease for the property, with three options to renew, each for a period of five years. The lease provided that RSC would pay an initial rent of $11,000 per month, with a cost of living adjustment 30 months into the term, and that the rent would be further adjusted to current fair market value at the commencement of each extended five-year term.

In 2002, Bob Rubenstein sold his 25% interest in RSC to Craig, a sale that left Craig the sole owner of RSC. As Judge Kramer would later observe, "[t]his arrangement, of course, placed Craig in a dual role of effectively being both the landlord and the tenant" under the lease.

In February 2002, T&C and L&B entered into a Property Management Agreement (PMA). Again, according to Judge Kramer, "[t]he possibility of a conflict from Craig's positions . . . was expressly recognized and dealt with under the arbitration clause of the PMA," which provides that any controversy between St. James and T&C relating to the PMA or the property be resolved by binding arbitration and that "[i]n resolving any controversy or dispute . . . which may arise between the Owners as to any action or decision that the Owners [St. James and T&C], as Lessors, should or should not take or make with respect to the Lessee [RSC], the Lease or the Property, the arbitrator shall apply a standard based upon the action that a typical sophisticated landlord, in an arms-length relationship with the Lessee, would

---

add, is not one we favor—indeed, one to be avoided. That said, we use the acronyms for consistency with the parties' briefing and with the descriptions in the orders and rulings by the arbitrator.

take under the circumstances for the reasonable protection of the Lessor's interest."

In July 2018, Bob Rubenstein died at the age of 97. According to St. James' opening arbitration brief: "In October 2018, while settling Bob's financial affairs, Ron and his mother were advised to get a professional appraisal to establish the Property's value, and thus determine the amount to include on Bob's estate tax return. The family retained the Berkeley appraisal firm Yovino-Young to provide an appraisal for estate tax purposes. When the family closely reviewed the late-2018 appraisal, they saw that Yovino-Young had also rendered the opinion that the fair market rent for the Property, on the same triple net basis as found in the Lease, was almost $24,500 per month. This meant that Lillian's share of the monthly rent should have been almost twice the monthly rent then being paid by RSC. This came as a total shock to Lillian and her family." Ron Rubenstein was also unable to find any indication that the lease had been renewed beyond the first option to do so, meaning it had expired on September 30, 2011, and that RSC had been a holdover tenant since that time.

**The 2019 Arbitration**

In August 2019, pursuant to the arbitration clause in the PMA, St. James commenced a JAMS arbitration before Judge Kramer.[2] According to St. James's opening arbitration brief, "[t]he core issues in this arbitration concern the additional sums owed to Lillian and the fair and proper terms of a new or retroactively-extended lease if RSC is to be permitted to remain in possession of the Property. [¶] St. James seeks a new five year, triple net lease, commencing effective March 1, 2019, at a monthly rate of $29,100. St.

---

[2] By this time, Lillian Rubenstein was 97 years old.

4

James further seeks to collect back rent owed under the Lease in the amount of $205,297.01, less recent payments by Craig."

And according to T&C's opening arbitration brief: "All parties desire to resolve this matter with a new lease. The parties agree on the lease term of five (5) years and the parties appear to agree that the form of the now expired written lease, for the sake of simplicity, should be adopted and extended by affixing a revised Rider to the lease, as herein alleged. To get there, the parties require a decision from the Arbitrator on the following issues: (a) fair rental value for this Property; (b) whether a rent adjustment or special lease terms are require[d] in order to account for the fact that the landlord's desire to assign to the tenant all obligation[s] to maintain the property beyond that ordinarily required in a triple net lease; and (c) a determination of the back rent dispute."

The parties presented testimony before Judge Kramer over three days in September of 2019.

**The February 9, 2020 Interim Award**

On February 9, 2020, Judge Kramer issued a 26-page "Interim Award," summarized by him as follows: "1. Under the terms of the PMA and the Lease, [T&C] has been and still is obligated to collect and distribute rent and related charges owed by RSC under the Lease. [¶] 2. [T&C] is bound under the PMA to collect and distribute the amounts owing under the Lease as a condition to the owners entering into a new lease of the property to RSC. [¶] 3. There is a problem with the proof of the specific amounts due under the Lease. There must be further discussion and perhaps legal argument and/or evidence before this problem can be resolved. Once the amounts not collected and distributed have been established, damages to the [St. James] for such breaches by [T&C] will be limited to four years before the Demand herein

5

was filed (July 19, 2019) and those not collected and distributed thereafter. No cost of living adjustments should have been imposed and collected once RSC became a holdover tenant. [St. James]'s request for judicial notice of certain related cost of living data is denied as irrelevant. [¶] 4. Neither [St. James] nor [T&C] has met its burden of proof regarding any of the claims, defenses and/or accusations against each other or Ron Rubenstein based upon purported bad faith, malice, ill-will, greed, fraud or other intentional tortious behavior, elder abuse, or other malfeasance. [¶] 5. The fair market rental value of the Property as of March 1, 2019 is $29,100.00 per month, plus three percent annual rent increases plus any rent collected from the billboard that is on the Property. Any new lease to RSC for the premises should be a triple net lease, for a five-year term, with whatever extensions the parties can agree to at an extension rental rate to be agreed to. [¶] 6. The arbitrator cannot determine whether [T&C]'s attorney in this arbitration bound RSC and/or [T&C] to a March 1, 2019 commencement date for the new lease because RSC is not a participant in this arbitration. [¶] 7. The arbitrator has not determined whether any of the foregoing determinations is binding on RSC."

Following a March 30 case management conference, on April 1, Judge Kramer issued a case management order regarding various remaining issues in the arbitration, including the drafting of a new lease for RSC, the issue of back rent as a condition for entering into the new lease, and an award of attorney fees to the prevailing party.

On May 1, Judge Kramer issued a six-page "Ruling on the Prevailing Party Issue, Including Applicability of PMA," concluding that St. James was "clearly the prevailing party in this arbitration" "for the purposes of an award

6

of attorneys' fees, related costs and JAMS charges for this arbitration"[3] because it had prevailed on the issue of the fair market rent of the property when Judge Kramer chose St. James' appraisal of the property, and on the issue of whether the PMA was binding on the parties, and "[n]o other issues in this case approached the foregoing in terms of significant litigation objectives." Judge Kramer ordered the parties to meet and confer regarding the appropriate amount of attorney fees to be awarded.

By stipulation entered as an order on May 15, the parties agreed that T&C would pay St. James attorney fees of $471,050.50 and costs of $78,215.30. The stipulation also provided: "[St. James] does not waive its right to seek and recover additional fees and costs incurred after May 11, 2020, including JAMS costs after April 30, 2020, in the event that there are further arbitration proceedings, including, inter alia, briefing, conferences, and or hearings. [T&C] reserves its right to object to any such further claims for fees and costs by [St. James]."

**The September 8, 2020 Partial Arbitration Award**

On September 8, Judge Kramer issued a 39-page "Partial Arbitration Award, Retention of Jurisdiction, and Order on Further Proceedings" (PAA). The PAA largely tracked the findings of the Interim Award, and concluded with a section titled "Further Proceedings," noting that "[t]here remains

---

[3] Paragraph 7(2) of the PMA provides: "<u>Fees and Costs to Prevailing Party</u>. Attorneys' fees and costs shall be awarded to the prevailing party in any such binding arbitration. However, the arbitrator's fees shall be paid initially by both sides, with instructions to the arbitrator that at the conclusion of the arbitration, the arbitrator shall make a finding of prevailing party and the nonprevailing party shall pay the prevailing party for all attorneys fees and costs incurred by the prevailing party, including the amounts advanced to pay for the services of the arbitrator."

7

further work to be done in order to resolve all of the issues presented or that have arisen," and identifying seven such substantive issues, including both "[St. James'] anticipated motion for further attorneys' fees and costs and arbitration costs and whether [T&C] will oppose such motion," and "[t]he filing and resolution of additional motions for attorneys' fees and arbitration fees and costs." The PAA ordered the parties to meet and confer and to submit a joint statement setting forth their positions on the remaining issues.

On November 5, St. James submitted a brief on "Unity of Interests and Related Issues," asking that Judge Kramer make a finding that T&C and RSC shared a unity of interest. That same day, St. James also submitted a brief on "Back Rent Issues," arguing that St. James was entitled to back rent with respect to the Property for the period between March 1 and August 31, 2019. T&C filed responses to both briefs on November 19, and on December 4 the issues were argued for approximately three hours and submitted for decision.

**T&C Petitions to Correct and Confirm the PAA as Corrected**

Meanwhile, on November 19, T&C initiated this litigation by filing a petition to "Correct and Confirm [the] Corrected Arbitration Award" in San Francisco Superior Court. The petition made three arguments: (1) "The [PAA] under JAMS Rule 24(A) is a Final Award"; (2) "The PAA's Reservation of Jurisdiction Is Improper Where There Were No Further Outstanding Issues to Determine the Controversy"; and (3) "Because the Relief Awarded by the PAA Was Self-Executing, the Reservation of Jurisdiction Was Unwarranted." The introduction to the petition concluded: "[T]he Arbitrator's reservation of jurisdiction to guide a self-executing award is

8

improper and should be corrected and stricken. The PAA, as corrected, should be deemed the final award, judgment entered, and this case closed."[4]

On December 23, St. James filed opposition, arguing in defense of Judge Kramer's reservation of jurisdiction and concluding: "The issues reserved by the arbitrator fall squarely [within] the PMA and constituted an appropriate exercise of arbitral discretion and the arbitration should not be disrupted or aborted while it is winding up."

A hearing was held on the petition on February 8, 2021, in advance of which the trial court issued a tentative ruling indicating that T&C's motion " 'is denied as to the correction request. The Court is inclined to confirm [the] arbitration award as is at this time if the parties agree to Court's ruling at this time. Otherwise, a new motion to confirm arbitration award shall be filed.' "

After the hearing, on February 19, the trial court issued an order summarizing the hearing as follows: "Both parties appeared to seek clarification of this Court's tentative ruling. In response, this Court indicated that, if the parties consented, the Court intended to confirm the [PAA] as signed by Judge Kramer and to retain jurisdiction over further proceedings in this matter. The parties, through counsel, consented to the Court's ruling as clarified and to the continued jurisdiction of this Court in this matter." The court's order concluded that the PAA "is confirmed as is and without correction, and this Court retains jurisdiction to determine any subsequent petition in accordance with Code of Civil Procedure Section 1292.6."[5]

---

[4] On December 1, St. James filed a motion to transfer venue to Alameda County Superior Court.

[5] Shortly thereafter, on February 23, the trial court denied St. James' motion to transfer venue.

9

On April 27, the trial court entered a "Stipulated Interlocutory Judgment on Confirmation of Partial Arbitration Award," entering judgment on the PAA. The judgment concluded: "The entry of this Stipulated Interlocutory Judgment is without prejudice to the entry of additional judgments if and as further partial awards and/or a final award is issued in the arbitration and confirmed by this Court."

**The Unity of Interest Issue and the Motion for Additional Attorney Fees**

On August 30, Judge Kramer issued a "Order on Unity of Interests and Related Issues," finding that "Craig Rubenstein is the alter ego of the [T&C], of RSC, and of any tenant that operates RSC on the Property. Such alter ego relationship renders Craig Rubenstein personally jointly responsible for any liabilities to [St. James] arising out of the claims raised in this arbitration." According to a declaration later filed by St. James's counsel, this order "came as a surprise since St. James never sought to have Craig Rubenstein held personally liable for anything, had made no such request in its briefs or oral argument and, since both T&C and RSC were financially responsible, had no need for this unrequested relief. In substance, Arbitrator Kramer decided an alter ego issue that no party had raised or submitted and ignored the alter ego issue that had been fully briefed and submitted." Judge Kramer's order concluded by ordering that St. James "shall file its motion for attorney fees and costs within 30 days."

On October 1, St. James filed a motion before Judge Kramer for "an award, for the period beginning May 12, 2020 and ending September 24, 2021, of attorney's fees in the sum of $279,487.50, costs in the sum of $2,742.65, and arbitration fees in the sum of $51,170.14." According to St. James, "approximately $93,765 was incurred in resisting T&C's efforts to

10

eviscerate the Partial Award by striking the Reservation of Jurisdiction portion thereof through its Superior Court petition. The remainder, the approximate sum of $239,635, was incurred in the Arbitration largely dealing with the terms of the new lease, the back rent, and RSC alter ego issues."

The motion was heard by Judge Kramer on November 14 and 19, and submitted for decision.

**The August 2022 Final Award**

On August 21, 2022, Judge Kramer issued a 55-page "Final Arbitration Award," largely tracking the PAA and his previous orders on the prevailing party issue and alter-ego issue regarding Craig Rubenstein, resolving certain issues regarding terms of a new lease between the parties, and stating, "this Final Award embodies everything that has transpired in the arbitration."[6] With respect to the issue of attorney fees, the final award provided: "[St. James] reserved the right to apply for additional attorneys' fees and costs incurred after May 11, 2020, some of which were incurred in the Court. The arbitrator leaves the updating of all amounts in the Stipulated interlocutory Judgment for the Court to determine because the arbitrator has no idea as to the status of that judgment, including whether and when it has been satisfied (necessary to calculate interest and other similar charges), and because the Court would anyway be reviewing whether a Final Judgment can be

---

[6] In a section titled, "History of this Arbitration," Judge Kramer observed: "[St. James] and [T&C] have contracted to a resolution of all of their disputes whereby [T&C] would buy out [St. James]'s positions upon the passing of the sole presently surviving principal in [St. James]. Such buyout would effectively end all disputes in this arbitration. In light of this rational resolution, the arbitrator requested several times after the issuance of the Partial Award that the parties mediate their remaining concerns. This request was not heeded."

11

modified, how much further attorneys' fees, incurred in the Court should be awarded, and deal with other issues if the arbitrator were to make that determination."[7]

**The Cross Petitions Regarding the Final Award**

On November 28, T&C filed a "Petition to Correct and Confirm the Final Arbitration Award," followed by a noticed motion on December 22. T&C took the position that "with the exception of an improper alter ego finding, [it] accepts the rulings under the Final Award," and "ask[ed] for the following relief: (1) that the final award should be corrected to strike the arbitrator's findings of alter ego/unity of interest against non-party and non-signatory (to the arbitration agreement), Craig Rubenstein, and (2) that the Final Award, as corrected be confirmed, and this case at long last, closed."

Also on November 28, St. James filed a petition to "vacate, or in the alternative to correct" the final award, followed by a noticed motion on December 13. St. James argued that the PAA had "expressly reserved jurisdiction to address several unresolved critical issues that had arisen, including: (1) the amount of back rent that T&C was obligated to collect from RSC as a condition to obtaining a new lease and remaining in possession; (2) whether RSC was the alter ego of T&C; and (3) the amount of additional attorney fees to be awarded to St. James as the already-adjudicated

---

[7] On September 6, 2022, St. James filed an "Application and Request to JAMS to Correct, Reopen, or Vacate the 'Final' Award," seeking a "replacement arbitrator to review the various briefs, memoranda and transcripts for the period following Judge Kramer's issuance of his Interim Award in order to identify those issues that were never resolved and, once identified, to resolve those issues . . . ." According to St. James' brief, JAMS never issued a ruling on the application, and by October 6, 2022, it was deemed denied as a matter of law under Code of Civil Procedure section 1284.

12

'prevailing party.' " And, St. James argued, because the final award "utterly failed to address the back rent and RSC alter ego issues over which the Arbitrator had expressly reserved jurisdiction," the final award "should be vacated or corrected such that it is re-classified as a 'Further Interim' award, and the omitted issues should be remanded to JAMS so that the assignment can be completed in accordance with the parties' contractual arbitration provision."

On January 4, 2023, T&C filed opposition to St. James' petition, and on January 10, both parties filed replies in support of their respective petitions.[8]

A hearing on both petitions was held on February 22.[9]

**The Trial Court's May 3, 2023 Order on the Petitions**

On May 3, the trial court issued its order on the cross-petitions regarding the final award. The court granted T&C's petition in part, confirming the final award "in its entirety," and denying the request to correct. The court denied St. James' petition, and concluded: "Respondent is to make a motion for attorney's fees before the entry of final judgment."

**The Motions for Attorney Fees**

Meanwhile, on May 2, T&C amended its previously-filed motion for attorney fees, arguing that it, not St. James, was the prevailing party in the post-arbitration trial court proceedings and seeking attorney fees and costs of $127,205.19.[10]

---

[8] T&C's reply brief indicates that St. James filed an opposition to its petition, but that opposition does not appear to be in the record on appeal.

[9] The record on appeal does not include a transcript of this hearing.

[10] T&C's motion stated that "[d]uring oral argument on the petitions [regarding the final award], the Court affirmed its tentative in all respects, but also clarified any party could make a motion for fees and costs," while St. James' opposition argued that "T&C sought to create and exploit the phrase

13

On May 2, St. James amended its previously-filed motion for attorney fees and costs, seeking attorney fees of $452,669.50, costs of $2,875.92, and JAMS arbitration fees of $54,265.39 for the period beginning May 12, 2020. St. James sought fees for the arbitration proceedings in the amount of $224,327.00, and fees in the trial court proceeding through April 18, 2023 of $225,921.50.

On May 25, T&C filed opposition, and on June 1, St. James a reply.

A hearing on the motions ultimately took place on November 17, in advance of which St. James submitted a letter to the court, attaching two spreadsheets indicating that St. James had incurred $318,715.65 in litigation fees and costs for work done from November 2020 through August 10, 2023 in connection with the trial court action.[11]

**The Hearing and the Trial Court's Fees Ruling**

At the beginning of the hearing on November 17, the trial court expressed its view that because "there has not been any agreement or stipulation that the Court can entertain these extra costs and fees" incurred in the arbitration, "the best I can do is adopt the costs and fees in the amount of $318,000, and then send it back" to JAMS.

---

'Respondent is to make a motion . . . ,' in the Court's ruling on the Petition to Confirm by claiming that it too was a Respondent, since cross-petitions had been filed."

[11] Meanwhile, according to T&C's opening brief: "Under the terms of an Option Agreement entered into in 2001, following the death of both parents (Bob and Lillian Rubenstein), St. James's 50% share of the subject property would be sold to T&C Properties, LLC, the entity owned by their son Craig Rubenstein and his wife, Terri Rubenstein. The sale of that 50% interest in the subject property closed escrow on September 29, 2023, and the lease that was at issue in the arbitration is terminated."

14

After hearing argument from counsel, the trial court indicated it would adopt its previously-issued tentative opinion as written.  The order stated: "St. James' Motion for Attorney's Fees is GRANTED as to fees and costs associated with the litigation phase of the dispute since it is the prevailing party.  Those fees and costs amount to $318,715.65.  The ruling regarding St. James' fees and costs associated with the arbitration phase of the dispute is dependent on the Parties' stipulation.  If the parties stipulate to the Court's authority to determine the amount of fees related to the litigation and arbitration, the Court GRANTS St. James Motion and awards it $438,623.50 in fees and $55,974.91 in costs.  This award includes both arbitration-related fees and costs and litigation related fees and costs."  However, in light of "T&C's declin[ing] to stipulate" to the court's jurisdiction to award fees incurred in the arbitration, the trial court granted St. James' motion "in part," and awarded it fees and costs of $318,715.65.

The trial court denied T&C's motion for fees "in its entirety for the reason that T&C Properties is not the prevailing party in the litigation phase of this dispute."

The trial court's order concluded:  "[T]he Court remands the case back to JAMS for determination of all further fees and costs.  [¶]  The Court expressly reserves jurisdiction to address future petitions concerning this matter as they may come back up for [*sic*] JAMS."[12]

---

[12] On several occasions in 2024, T&C requested that we take judicial notice of certain documents from various proceedings after the trial court's fee order, seeking its arbitration-related fees and costs, and St. James' subsequent renewed motion for attorney fees and costs before the trial court. We deferred ruling on these requests until we resolved the merits.  Because these documents are not necessary to our resolution of this appeal, we now deny the requests.

15

On January 9, 2024, T&C filed a notice of appeal.

## DISCUSSION

### The Fees Order Is Appealable as a Collateral Order

We briefly address St. James' argument, premised on Code of Civil Procedure[13] sections 1294 and 904.1, that we lack jurisdiction to consider this appeal because the trial court's order awarding attorney fees is not an appealable order. St. James previously filed a motion to dismiss this appeal on the same ground, which we denied. While that prior order does not preclude us from revisiting this issue (*Kowis v. Howard* (1992) 3 Cal.4th 888, 900–901), we adhere to our prior determination that St. James' argument is misplaced, because the portion of the order awarding fees in the trial court proceedings is appealable under the collateral order doctrine. (See, e.g., *Roberts v. Packard, Packard & Johnson* (2013) 217 Cal.App.4th 822, 830, fn. 4; *Acosta v. Kerrigan* (2007) 150 Cal.App.4th 1124, 1128, fn. 4; *Lachkar v. Lachkar* (1986) 182 Cal.App.3d 641, 645, fn. 1; see also *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 966, fn. 3.)

We thus reach the merits of T&C's appeal—and conclude it has none.

### The Trial Court Did Not Err in Concluding That St. James Was the Prevailing Party

#### Applicable Law

Section 1293.2 provides: "The court shall award costs upon any judicial proceeding under this title [governing arbitration] as provided in Chapter 6 (commencing with Section 1021) . . . of this code." Section 1033.5, part of chapter 6 of the Code of Civil Procedure, provides that items recoverable as costs include attorney fees when authorized by contract. (§ 1033.5, subd.

---

[13] Further statutory references are to the Code of Civil Procedure.

16

(a)(10)(A).) "The judicial proceedings covered by this provision include petitions to confirm or vacate an arbitration award." (§ 1285; *Marcus & Millichap Real Estate Investment Brokerage Co. v. Woodman Investment Group* (2005) 129 Cal.App.4th 508, 513 (*Marcus & Millichap*).)

"The award of costs pursuant to section 1293.2, including attorney fees when authorized by contract, is mandatory." (*Marcus & Millichap*, *supra*, 129 Cal.App.4th at p. 513; see *Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 707 ["[a] court must award costs in a judicial proceeding to confirm, correct or vacate an arbitration award"]; *Carole Ring & Associates v. Nicastro* (2001) 87 Cal.App.4th 253, 260 (*Carole Ring*) ["the superior court was required to award [the prevailing party] reasonable attorney fees and costs for postarbitration judicial proceedings, pursuant to the statutory scheme governing arbitration"].)

Post-arbitration proceedings are distinct from arbitration proceedings, and it may be that the prevailing party in the arbitration is not the prevailing party in post-arbitration proceedings. (*Marcus & Millichap*, *supra*, 129 Cal.App.4th at pp. 514, 516; see *Carole Ring*, *supra*, 87 Cal.App.4th at p. 261.) "Courts look to section 1032 to determine which party is the prevailing party in postarbitration proceedings." (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 878 (*Cohen*); *Marcus & Millichap*, at p. 514.) Section 1032, subdivision (a)(4), defines "[p]revailing party" as follows: " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as

17

determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034."

"[T]he trial court has no discretion to deny prevailing party status to a litigant who falls within one of the four statutory categories in the first prong of the provision." (*Wakefield v. Bohlin* (2006) 145 Cal.App.4th 963, 975; see *Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1197–1198.)

However, under the last prong of the provision, " 'the trial court in its discretion determines the prevailing party, comparing the relief sought with that obtained, along with the parties' litigation objectives as disclosed by their pleadings, briefs, and other such sources.' " (*Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1104 (*Friends*).) Thus, the relevant inquiry is "whether the party succeeded at a practical level by realizing its litigation objectives [citation] and the action yielded the primary relief sought in the case." (*Ibid.*)

We review the trial court's determination of the prevailing party under the last prong of section 1032 for an abuse of discretion. (See *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1338–1339; *Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1155–1158.)

As to what such showing of such abuse requires, it has been described in terms of a decision that "exceeds the bounds of reason" (*People v. Beames* (2007) 40 Cal.4th 907, 920), or one that is arbitrary, capricious, patently absurd, or even whimsical. (See, e.g., *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390; *People v. Benavides* (2005) 35 Cal.4th 69, 88 [ruling " ' "fall[s] 'outside the bounds of reason' " ' "].) In its observation on the subject in a leading case, our Supreme Court said that "A ruling that

18

constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).) Or, as that court put it in a more recent opinion, "arbitrary or irrational." (*In re White* (2020) 9 Cal.5th 455, 470.) T&C does not show that those descriptions apply here.

**St. James Was The Prevailing Party**

T&C argues that the trial court had no discretion to deny it prevailing party status because it was a "defendant" as against whom St. James as "plaintiff" did not recover any relief under the third and fourth prong of section 1032, subdivision (a)(4), and that the trial court abused its discretion in concluding that St. James was the prevailing party under the last prong of section 1032, subdivision (a)(4) because T&C realized its litigation objectives at a practical level.

As T&C acknowledges, "there are two relevant briefing moments that made up the post arbitration proceedings in this action: the first was to confirm the PAA; the second was to confirm the Final Award."

We first turn to T&C's argument—occupying a mere two paragraphs in its opening brief, without any citation to authority, other than to section 1032 itself—that it was the "prevailing party" under section 1032, subdivision (a)(4) because it falls into two of the four categories under the first prong of the subdivision, both because it is "a defendant where neither plaintiff nor defendant obtains any relief," and "a defendant as against those plaintiffs who do not recover any relief against that defendant," because "St. James obtained no relief in the post-arbitration proceeding."

First, we note that T&C did not make any argument before the trial court based on the mandatory statutory categories in its motion for attorney

19

fees, arguing instead that it was the prevailing party because it "achieved its primary litigation objectives in each phase of the postarbitration judicial proceedings." In fact, in opposing St. James' motion for attorney fees, T&C admitted that "this case does not fit neatly into the four enumerated categories for a prevailing party," and that therefore the trial court "has the discretion to determine whether to allow fees and costs, including an apportionment of costs." Thus, we can treat the issue as waived. (See, e.g., *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 685 ["Contentions or theories raised for the first time on appeal are not entitled to consideration."].)

As we recently explained in *Doe WHBE 3 v. Uber Techs., Inc.* (2024) 102 Cal.App.5th 1135, 1152 (*Uber*), in language equally applicable here: "It is well settled ' "that a party to an action may not, for the first time on appeal, change the theory of the cause of action [citations] and that issues not raised in the trial court cannot be raised for the first time on appeal. [Citations.]" (*Estate of Westerman* (1968) 68 Cal.2d 267, 279, fn. omitted; see *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12.)' (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; see generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 8:229.)"

If T&C believed that this case fit into one of the four enumerated categories for a prevailing party under section 1032, subdivision (a)(4), they "could have so argued below, giving [the trial court] an opportunity to address the issue. They did not. Instead . . . they expressly conceded" that the case did not "fit neatly" into those categories. (*Uber*, *supra*, 102 Cal.App.5th at p. 1152; see *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519 ["finding it 'particularly unfair and inappropriate' to complain that trial court erred

20

when plaintiff " 'led the trial court down that path by . . . *conceding the very issue he now disputes*' "].)

In any event, the argument has no merit. T&C simply asserts, without explanation or authority, that it is " 'the defendant' in this context." But the definition of "Defendant" under section 1032—which T&C does not cite or discuss—provides: "As used in this section, unless the context clearly requires otherwise: . . . [¶] . . . (2) 'Defendant' includes a cross-defendant, a person against whom a complaint is filed, or a party who files an answer in intervention." (§ 1032, subd. (a).) The proposition that T&C could be considered a "cross-defendant" and therefore the "prevailing party" by virtue of St. James having filed its own petition to vacate or correct the final award some two years after the litigation began is doubtful. (See *McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1453–1455 [concluding that "[t]he phrase 'a defendant where neither plaintiff nor defendant obtains any relief" [in section 1032] compels the conclusion that a defendant in this context does not include the plaintiff as a cross-defendant"].) Even if it could, the context here "clearly requires otherwise." (§ 1032, subd. (a).) T&C initiated the superior court action by filing a petition to confirm and correct the PAA, and filed two of the three petitions that comprise the entirety of the post-arbitration judicial proceedings for which the trial court awarded St. James its attorney fees. In short, the trial court had discretion to determine the prevailing party under the second sentence of section 1032, subdivision (a)(4).

### The Trial Court Did Not Abuse Its Discretion In Determining that St. James Was the Prevailing Party

In order to determine the prevailing party, the trial court was required to "compar[e] the relief sought with that obtained, along with the parties'

21

litigation objectives as disclosed by their pleadings, briefs, and other such sources," with the relevant inquiry being "whether the party succeeded at a practical level by realizing its litigation objectives [citation] and the action yielded the primary relief sought in the case." (*Friends*, *supra*, 33 Cal.App.5th at p. 1104.) That was not T&C.

### The Initial Petition

The bulk of T&C's initial petition to correct and confirm the PAA attacked the reservation of jurisdiction in the PAA and asked that it be "corrected and stricken," and that "[t]he PAA, as corrected, should be deemed the final award, judgment entered, and this case closed." St. James argued that T&C "asks this Court to interrupt and terminate an ongoing arbitration at a time when all remaining issues—except for final attorneys' fees reserved by the Arbitrator for the end of the arbitral process—have been fully briefed and submitted," and sought to have the reservation of jurisdiction confirmed intact.[14]

As noted, in advance of the hearing on February 8, 2021, the court issued a tentative ruling indicating that T&C's motion "is denied as to the correction request. The Court is inclined to confirm [the] arbitration award as is at this time if the parties agree to Court's ruling at this time. Otherwise, a new motion to confirm [the] arbitration award shall be filed."

---

[14] St. James asserts that T&C's brief misleadingly asserts several times that St. James opposed confirmation of the PAA—assertions not denied in T&C's reply brief. As a reading St. James's opposition makes clear, it did not oppose confirmation of the PAA in its entirety, but rather T&C's effort to have the PAA "corrected" to strike the reservation of jurisdiction. Indeed, at the February 9 hearing, St. James's counsel expressly told the trial court: "We have no problem whatsoever with confirming the arbitration award including the reservation of jurisdiction to decide the matters that were argued and briefed and submitted to Judge Kramer on December 4th."

After the hearing, the parties stipulated to an order denying T&C's request to correct and confirming the PAA "as is and without correction," with the court retaining "jurisdiction to determine any subsequent petition in accordance with Code of Civil Procedure section1292.6."

In this phase of the litigation, T&C clearly failed in its objective of having the reservation of jurisdiction stricken, "judgment entered, and this case closed." Instead, the PAA was confirmed "as is and without correction," including the reservation of jurisdiction, exactly as St. James had requested.[15]

T&C argues that it was successful on its petition because the parties ultimately "stipulated to confirm the PAA," and "result was that T&C's petition to confirm the PAA was successful." But this characterization ignores the main thrust of T&C's petition, which was to "correct" the PAA in order to strike the reservation of jurisdiction. The fact that there was a stipulation to confirm the PAA without correction—after the trial court's tentative ruling indicating it intended to do just that—does not transform T&C's failure to achieve its litigation objective into success. It was St. James, not T&C, that achieved its litigation objective, even if it ultimately did so by stipulation. (See, e.g., *Santisas v. Goodin* (1998) 17 Cal.4th 599, 622 ["a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment,

---

[15] At several points in its brief, T&C mentions the trial court's February 23 denial of St. James' motion to transfer venue. However, T&C's victory on this motion was of little consequence in the context of the parties' broader litigation objectives for the purposes of determining prevailing party status. (See, e.g., *DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 981 [interim procedural victories do not determine prevailing party status where not dispositive of the dispute].)

23

settlement, or otherwise"]; *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 572 ["it is difficult to fathom why a plaintiff cannot be considered a prevailing or successful party when it achieves its litigation objectives by means of defendant's 'voluntary' change in conduct in response to the litigation"]; *Artus v. Gramercy Towers Condo. Assn.* (2022) 76 Cal.App.5th 1043, 1051 [" ' "[T]he test for prevailing party is a pragmatic one, namely whether a party prevailed on a practical level by achieving its main litigation objectives" ' "].)

### Cross Petitions Regarding the Final Award

In the second phase of the litigation, T&C sought to have the final award "corrected to strike the arbitrator's findings of alter ego/unity of interest against non-party and non-signatory (to the arbitration agreement), Craig Rubenstein," the balance of the award confirmed, and again sought to have "this case at long last, closed."

St. James opposed T&C's petition, and brought its own, seeking "vacation or correction such that the award is redesignated as a 'Further Interim' Award, with the omitted substantive issues [back rent, unity of interest, and attorney fees] remanded to a new arbitrator at JAMS for adjudication."

The court ultimately denied both parties' requests that the final award be modified, corrected, or vacated. Instead, it confirmed the final award in its entirety—an award that chose St. James' valuation of the rental value of the property at $29,100 per month, awarded St. James $19,196 in rent from the holdover period, plus interest and late charges, led to an award to St. James of $549,265.80 in attorney fees and costs, and declared St. James to be the prevailing party in the arbitration. The trial court also rejected T&C's argument that "any further fees and costs requested by St. James Property,

24

beyond those already awarded in the PAA, should be denied," and expressly invited St. James to file a motion for attorney fees. Finally, the court did not enter judgment and "close" the case, as T&C had requested.

Considering the three motions regarding the arbitrator's awards, it is true that St. James did not achieve all its litigation objectives, but they achieved some. On the other hand, it is difficult to see how T&C achieved much of anything at all. Over the course of litigation that has now spanned almost four years—and evidently caused St. James to incur at least $318,000 in attorney fees—T&C succeeded only in having the PAA and the final award confirmed exactly as issued—awards that were substantially in St. James' favor. Certainly we cannot say the trial court's discretionary conclusion that on balance, St. James was the prevailing party "exceeds the bounds of reason" or is " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*People v. Beames*, *supra*, 40 Cal.4th at p. 920; *Sargon*, *supra*, 55 Cal.4th at p. 773.)

The cases on which T&C relies—*Carole Ring*, *supra*, 87 Cal.App.4th 253, *Marcus & Millichap*, *supra*, 129 Cal.App.4th 508, *Friends*, *supra*, 33 Cal.App.5th 1092, and *Cohen*, *supra*, 31 Cal.App.5th 840—do not support it.

In *Carole Ring*, *supra*, 87 Cal.App.4th 253, the trial court denied Nicastro's motion for attorney fees in post-arbitration proceedings, even though Nicastro had ultimately obtained judgment confirming an arbitration award in its favor, because the arbitrator had ordered the parties to bear their own fees and costs. *Carole Ring* held simply that "Nicastro is entitled under the contract to post arbitration attorney fees and costs, notwithstanding the arbitrator's denial of same at the arbitration level." (*Id.* at p. 261.) *Carole Ring* did not involve review of a trial court's prevailing party determination under section 1032. Moreover, here, and in contrast to

*Carole Ring*, T&C did not obtain simple confirmation of an arbitration award in its favor, but rather had both of its requests to "correct" arbitration awards in St. James's favor denied.

Similarly, *Marcus & Millichap*, *supra*, 129 Cal.App.4th 508 affirmed the trial court's award of attorney fees and costs to the respondents under section 1032, where the trial court denied the appellant's petition to confirm an arbitration award in its favor and instead granted respondents' cross-petition to vacate that award. (*Id*. at p. 514.) But the bulk of the *Marcus & Millichap* opinion was devoted to rejecting the appellant's argument that the trial court erred in awarding attorney fees because the arbitration award was not "final." (*Id*. at pp. 514–516.) The trial court here confirmed the arbitration awards in St. James's favor and denied T&C's requests to "correct" those awards.

T&C's opening brief engages in an extensive discussion of *Friends*, *supra*, 33 Cal.App.5th 1092, although that case did not involve fees awarded in connection with post-judicial proceedings regarding an arbitration award at all, but rather a petition for writ of mandate and complaint for declaratory and injunctive relief, challenging the respondent city's determination that landowners had a right to resume operation of a bed and breakfast facility in a residential district, despite the passage of an initiative measure repealing the provision in the city's municipal code allowing such facilities. (*Friends*, *supra*, 33 Cal.App.5th at pp. 1097–1099.) The *Friends* plaintiff also challenged a 2015 city ordinance amending the municipal code with relation to the discontinuance of bed and breakfast guest facilities. (*Id*. at p. 1099.) After the trial court upheld the ordinance, the Court of Appeal reversed the trial court's decision upholding the city's ruling with respect to the bed and breakfast. (*Id*. at p. 1101.) On remand, the trial court denied the plaintiff's

26

motion for attorney fees, finding that there was no prevailing party because plaintiff obtained relief on only one of its causes of action and did not "achieve any practical result" from the litigation. (*Id*. at pp. 1102–1103.) Plaintiff again appealed, and the Court of Appeal reversed and remanded for the trial court to make a determination of the prevailing party under section 1032, observing that the plaintiff had achieved "success at a practical level because plaintiff realized its primary litigation objective" of reversing the city's interpretation of the initiative measure, resulting in the planning commission's denial of real parties' application to resume operation of the bed and breakfast remaining intact. (*Id*. at pp. 1106, 1111.)

T&C argues that its action similarly "yielded the primary relief sought," in that it brought "an end to a run-away arbitration by confirmation of the PAA and Final Award." We cannot agree with this after-the-fact characterization of T&C's litigation aims. Indeed, as discussed, it is T&C that failed to achieve any "practical result" through this litigation.

Finally, there is *Cohen*, *supra*, 31 Cal.App.5th 840, which T&C asserts supports it as a matter of law. Hardly.

There, plaintiff Cohen, an attorney and investment advisor, invested his law firm's retirement plan in notes issued by the respondent, and recommended them to certain of his clients. (*Cohen, supra,* 31 Cal.App.5th at pp. 847–848.) After the companies defaulted on the notes, Cohen brought claims in arbitration, " 'individually and as representative of [his] client noteholders.' " (*Id*. at p. 853.) The arbitrator issued awards in favor of Cohen's clients, but concluded that neither Cohen nor his law firm were entitled to an award, and ordered that attorney fees and costs be paid equally by claimants and respondents. (*Id*. at p. 853–854.) Respondents then petitioned to vacate the award, and Cohen, his law firm, the retirement plan,

and his clients filed cross-petitions to correct and confirm the award, arguing that the arbitrator exceeded his authority by denying attorney fees to the prevailing parties and that the arbitrator made a mistake in the amount of the award for one investor. (*Id*. at p. 855.) The court denied the petitions to vacate and to correct the award (with the exception of correcting the award for the individual investor) and granted the petitions to confirm. (*Ibid*.) The court then denied Cohen and his clients' motion for attorney fees incurred in connection with the petitions, "suggesting it agreed with the arbitrator's ruling and reasons for denying an award of attorneys' fees," without "appear[ing] to have considered whether the Cohen Parties were prevailing parties in postarbitration proceedings." (*Id*. at p. 877.) The Court of Appeal reversed, concluding that "the Plan and Cohen's clients were prevailing parties in the postarbitration proceedings because they successfully defeated the petition to vacate the award and successfully confirmed the monetary awards in favor of Cohen's clients. (See *Marcus & Millichap*, *supra*,129 Cal.App.4th at p. 514 [parties that defeated the petition to confirm were the prevailing parties '[a]s a matter of law']; *Carole Ring*, *supra*, 87 Cal.App.4th at p. 261 [party that obtained reversal on appeal with directions to the trial court to enter judgment confirming an arbitration award was the prevailing party].) The fact that the arbitrator denied attorneys' fees to the Cohen Parties did not give the trial court discretion to deny attorneys' fees under section 1293.2." (*Cohen*, *supra*, 31 Cal.App.5th at pp. 878–879.)

In sum, the trial court in *Cohen* did not make a prevailing party determination subject to review for abuse of discretion, but instead improperly relied on the arbitrator's decision not to award attorney fees as a basis for not doing so in the post-arbitration judicial proceedings. (*Cohen*, *supra*, 31 Cal.App.5th at p. 879.) The *Cohen* court did not conduct any

28

analysis of the prongs of section 1032. Here, unlike the plaintiffs in *Cohen*, T&C did not defeat a petition to vacate an arbitration award making a monetary award in its favor, nor did it succeed in its first objective of having the reservation of jurisdiction in the PAA stricken and the "case closed," or its second objective of having the alter ego/unity of interest finding regarding Craig Rubenstein stricken from the final award. Instead, at best, and as discussed, T&C obtained confirmation of the final award finding substantially in St. James' favor and declaring St. James the prevailing party. *Cohen* does not support that T&C was the prevailing party in the post-arbitration proceedings as a matter of law.

### T&C Has Not Demonstrated Error In the Amount of the Fee Award

T&C also briefly argues that even if St. James is entitled to attorney fees as the prevailing party, it is "not entitled to *all* its post-arbitration attorneys fees" incurred in the "post-arbitration proceedings," relying on *Cohen*'s statement that the prevailing parties entitlement to fees "was limited to attorneys' fees incurred in opposing the petition to vacate and bringing the cross-petition to correct the award in favor of the client investor whose award was inadvertently misstated and corrected," because they "did not prevail on their other two cross-petitions. ([*Cohen*, *supra*, 31 Cal.App.5th] at p. 879.)"

We reject this argument, for several reasons. First, T&C waived this argument by failing to make it to the trial court, arguing instead that St. James was not the prevailing party and that even if it were, its fee motion should be denied because it "commingled its fees incurred in the arbitration and [the] Superior Court action." (See *Doe WHBE 3 v. Uber Techs., Inc.*, *supra*, 102 Cal.App.5th at p. 1152.) Second, the amount and apportionment of costs was a matter for the trial court's discretion. (§ 1032, subd. (a)(4).) As

we ourselves have put it, " 'Once a trial court determines entitlement to an award of attorney fees, apportionment of that award rests within the court's sound discretion.' [Citation.] And the burden is on [T&C] 'to establish that discretion was clearly abused and a miscarriage of justice resulted.' " (*Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App. 5th 1155, 1177, citing *Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 505.)

Finally, T&C has not identified which specific fees it believes should not have been awarded, nor explained why, except to repeat its argument "that St. James is not entitled to any attorney's fees because St. James did not prevail on any of its petitions filed in the post-arbitration proceedings," an argument we have already rejected. The trial court's order "is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

## DISPOSITION

The order is affirmed. St. James shall recover its costs on appeal.

_____

RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(*T&C Properties v. St. James Properties A169514*)